UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 14-cr-236(1) (JNE/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Fahad Abdihakim Diriye, | |
| Defendant. | |

---

Jeffrey S. Paulsen, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Frederick J. Goetz, Goetz & Eckland PA, 43 Main Street Southeast, Suite 505, Minneapolis, MN 55414 (for Defendant).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion to Suppress Statements (ECF No. 20) and Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 25). These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Joan N. Ericksen, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1(a)(3).

A hearing was held on September 16, 2014. Assistant United States Attorney Jeffrey S. Paulsen appeared on behalf of the United States of America (the Government). Attorney Frederick J. Goetz appeared on behalf of Defendant Fahad Abdihakim Diriye.

The Court heard testimony from Officer Scott Aikins of the Minneapolis Police Department. The Court received the following exhibits: Defendant's Exhibit 1, a

1

supplement report of Minneapolis Police Officer John Staufenberg, and Defendant's Exhibit 2, a supplement report of Minneapolis Police Officer Hien Dinh.

Post-hearing briefing is now complete and these motions are ripe for a determination by the Court.

## I.

Based upon the file and documents contained therein, along with the testimony presented and exhibits received, the undersigned Magistrate Judge makes the following:

### FINDINGS

On the evening of June 25, 2014, Officer Aikins responded to a report of a suspicious vehicle in a parking lot at Thomas Beach near Lake Calhoun. The car was thought to be involved in an armed robbery[1] that occurred in downtown Minneapolis a few days earlier. The robbery had taken place on June 22 and, on June 24, suspects in the robbery had been observed in the car. At the time, no suspects were in custody. The dispatch also indicated that a gun was possibly involved in the robbery. (Def. Ex. 1.)

Three squads, including Officer Aikins, arrived at the scene and parked approximately one to two squad-lengths away from the car. According to Officer Aikins, law enforcement "basically swarmed over the car." A man and a woman were ordered out of the car, handcuffed, and placed in the responding squads. Approximately, 15 minutes later, while law enforcement was determining what to do with the car, another male, later identified as Defendant, walked up to the car, opened the driver's door, and

---

[1] At times, this incident is referred to as a robbery and, at other times, it is referred to as a burglary. For purposes of these motions, the precise crime is irrelevant.

began to get inside. (*Id.*) Officers ran over to the car and ordered Defendant out. At the time, the car had not yet been searched or secured.

Defendant exited the vehicle with his hands up and was handcuffed by Officer Aikins. While Defendant and Officer Aikins were standing next to the car, Defendant appeared to be continuously turning away from Officer Aikins, trying to turn his right side away from Officer Aikins. Defendant was told to settle down, but did not comply. Officer Aikins was concerned that Defendant might be trying to grab a weapon and began patting him down. Officer Aikins immediately felt a hard, L-shaped object in Defendant's pocket, which he recognized as a handgun. Officer Aikins reached into Defendant's pocket and removed a loaded handgun.

At the hearing, Officer Aikins acknowledged that Defendant was not named in the dispatch, he did not observe Defendant commit any crime, he had no specific information linking Defendant to the car, he did not observe Defendant take anything out or put anything in the car, and Defendant did not try to flee.

## II.

Based upon the foregoing Findings, the undersigned makes the following:

### CONCLUSIONS OF LAW

Defendant asserts that law enforcement lacked reasonable suspicion that he was involved in criminal activity and moves for suppression of all evidence obtained as the result of his seizure and the statements he made to law enforcement during an interview

the day following.[2]  Defendant argues that the dispatch on which law enforcement relied "did not contain any individual suspect description []or any other information specific to [him] that connected him with the robbery," only the car. (Def.'s Mem. in Supp. at 7, ECF No. 32.) Defendant also argues that law enforcement did not have reasonable suspicion that the car was involved in the earlier robbery. In addition, Defendant argues that, even if law enforcement had reasonable suspicion to stop the car, it was not "reasonable under the Fourth Amendment to seize anybody who might walk up to the vehicle and open a door some three days after the crime occurred." (*Id.* at 8.)

**A. Investigatory Stop**

"A police officer may conduct a brief, investigatory stop of an individual if the officer reasonably suspects that the individual is involved in criminal activity." *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Reasonable suspicion must be based on specific, articulable facts. In determining whether an officer had reasonable suspicion based on specific, articulable facts, [courts] look at the totality of the circumstances, allowing officers to draw on their experience and training." *Id.* (quotation and citation omitted). "Reasonable suspicion does not require 'absolute[] certain[ty];' rather an officer must observe 'unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.'" *Id.* at 821 (alteration in original) (quoting *Terry*, 392 U.S. at 27, 30). "While reasonable suspicion must be more than an inchoate hunch, the Fourth

---

[2] In Defendant's motion to suppress statements, Defendant identifies both statements made on June 25 and during the interview on June 26. (Def.'s Mot. to Suppress Statements ¶ 1.) At the hearing, however, Defendant clarified that he was just challenging the June 26 statement.

Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Walker*, 555 F.3d 716, 719 (8th Cir. 2009) (quotation omitted).  "In deciding whether to conduct a *Terry* stop, an officer may rely on information provided by other officers as well as any information known to the team of officers conducting the investigation." *United States v. Allen*, 705 F.3d 367, 370 (8th Cir. 2013) (quotation omitted).

Similarly, "[t]he Fourth Amendment permits an investigatory stop of a vehicle if officers have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity.  In such a case, officers may briefly stop an individual and make reasonable inquiries aimed at confirming or dispelling the suspicion." *United States v. Smith*, 648 F.3d 654, 658 (8th Cir. 2011) (quotations and citation omitted).

At the time law enforcement approached the car, they knew that the car matched the description of a vehicle involved in a robbery occurring just a few days before for which no one was in custody.  This information provided a reasonable basis to stop the car and its occupants to investigate possible associations with the robbery and confirm or dispel suspicions regarding the car's involvement.  *Id.*; *see Lawhorn*, 735 F.3d at 821 (reasonable suspicion existed to stop vehicle where "upon arriving at the lot[,] the officers found a car matching the caller's description, shined a spotlight at the car, and observed the car's occupant to look back at them wide-eyed and reach quickly into the back seat"); *Allen*, 705 F.3d at 370 (law enforcement had reasonable suspicion to stop SUV to investigate SUV's possible association with minivan where vehicles appeared to be travelling in tandem and large quantity of marijuana was found in minivan); *see also*

*United States v. Marxen*, 410 F.3d 326, 332 (6th Cir. 2005) ("[W]e conclude that police are permitted to conduct a *Terry* stop to investigate completed felonies if they have reasonable suspicion to believe that the vehicle stopped was involved in criminal activity and the stop may produce evidence of a crime even if officers do not have reasonable suspicion to believe that the owner and/or driver of the vehicle was directly involved in the criminal activity.").

Defendant argues that, even if there was reasonable suspicion to stop the car, there was no reasonable suspicion "that [he] was involved in or wanted in connection with the robbery." (Def.'s Mem. in Supp. at 8.) The Government essentially concedes that law enforcement "had no pre-existing information tying [Defendant] to the armed robbery or the suspect vehicle." (Gov't's Mem. in Opp'n at 4, ECF No. 33.) The Government contends, however, that "[D]efendant's own actions in entering the vehicle provided all the reasonable suspicion that was needed." (*Id.*) The Government contends that law enforcement could reasonably assume Defendant had "some connection to the suspect vehicle or he would not have entered it. And, if [Defendant] was connected to the vehicle, there also was reasonable suspicion to believe he was connected to the robbery." (*Id.*) The Government also contends that because law enforcement "had reason to believe there was a gun in the suspect vehicle" and "[t]hey had not searched the vehicle yet or secured it in any way," law enforcement had "reasonable suspicion to believe [Defendant] was either trying to conceal or make off with evidence, or worse, attempting to access a weapon to use against the police." (*Id.* at 3.)

6

Defendant appears to be suggesting that his behavior was wholly innocent and that it is not "reasonable under the Fourth Amendment to seize anybody who might walk up to . . . [a] vehicle and open a door some three days after the crime occurred." (Def.'s Mem. in Supp. at 8.) But "[t]he behavior on which reasonable suspicion is grounded . . . need not establish that the suspect is probably guilty of a crime or eliminate innocent interpretations of the circumstances." *United States v. Carpenter*, 462 F.3d 891, 986 (8th Cir. 2006). Defendant walked up to a car believed to be involved in a recent armed robbery—a car which was essentially flanked by squad cars—opened the driver's door, and began to seat himself in the vehicle. Based on Defendant's actions, it is not unreasonable to infer that he owned or had control over the car. It was reasonable for law enforcement to conclude that Defendant was associated with the car (and therefore potentially the robbery) and conduct a brief investigatory stop of Defendant to confirm or dispel their suspicions. While there may be wholly innocent explanations for such conduct, it was not unreasonable under the circumstances for law enforcement to stop Defendant and investigate his connection to the car.

Further, it was not unreasonable for law enforcement to handcuff Defendant during the investigatory stop given the suspected use of a gun in the robbery they were investigating and the fact that law enforcement had not yet been able to clear the car (including removing any weapons present) after taking the other two individuals into custody. *See id.* at 659 ("As part of a lawful *Terry* stop, officers may take any measures that are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." (quotations omitted)); *El-Ghazzawy v. Berthiaume*,

363 F.3d 452, 457 (8th Cir. 2011) ("'[F]or the use of handcuffs during a *Terry* stop, the Fourth Amendment requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose, evaluated on the facts of each case.'" (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005)).

Defendant likens this case to *United States v. Hudson*, 405 F.3d 425 (6th Cir. 2005). In *Hudson*, an armed robbery occurred at a convenience store in 2000. 405 F.3d at 428. Hudson, a black male, was identified "from a series of suspect photographs and a warrant was issued for [his] arrest." *Id.* at 428, 429, 433-34. Law enforcement was unable to locate Hudson. *Id.* at 428. Approximately one year later, the investigator received an anonymous tip from a colleague that a woman the investigator suspected was Hudson's girlfriend was working at another convenience store in the same town. *Id.* The tip stated that on a certain date, Hudson's girlfriend would arrive at the convenience store around 3:00 p.m. and be accompanied by Hudson. *Id.* In an effort to corroborate the tip, the investigator confirmed the girlfriend's employment at the convenience store through the manager and learned that the girlfriend usually arrived ten minutes before her shift began. *Id.* at 428-29. It was disputed whether the manager also confirmed the type of car—a Ford Taurus—that Hudson's girlfriend drove. *Id.* at 429. In addition, based on his years as a police officer in the community, the investigator testified that he knew that Hudson and his girlfriend were romantically involved and had a child. *Id.*

Law enforcement set up at the convenience store to wait for Hudson's girlfriend to arrive. *Id.* Around 3:00 p.m., Hudson's girlfriend pulled into the parking lot in a Ford

8

Taurus. *Id.* She was accompanied by two black males and an infant. *Id.* Law enforcement "approached the car with their firearms drawn in a so-called 'felony approach'" because "they suspected that Hudson might be armed since he had allegedly used a firearm to commit the robbery." *Id.* Only after the three individuals were searched and handcuffed, and crack cocaine discovered on Hudson's person, did law enforcement confirm their identities.

Hudson moved to suppress the crack cocaine. *See id.* at 439. The Sixth Circuit concluded that the district court erred in denying Hudson's motion because the investigative stop was not supported by reasonable suspicion. *Id.* The Sixth Circuit noted that "the tipster's most critical assertion—that Hudson would be in the car"—had been discredited because, "[w]hile [the investigator] testified that the tip had included this prediction, [the investigator's] report, which he composed soon after receipt of the tip, makes no reference to it." *Id.* at 433. The Sixth Circuit concluded that law enforcement "had no more than a hunch that Hudson would be accompanying [his girlfriend] to work on the day in question and no more than a hunch that one of the passengers in [her] car was Hudson." *Id.* at 434. Such a "hunch" lacked the specific and articulable facts needed to form reasonable suspicion under the Fourth Amendment. *Id.*; *see also id.* at 438 ("[T]he tip upon which the government relies did not mention Hudson and consequently offers no support for the government's contention that officers reasonably suspected that Hudson was in the car.").

The Sixth Circuit reasoned that,

9

> [a]t most, [the investigator's] previous knowledge of Hudson and [his girlfriend] furnished the officers with reasonable suspicion that the two were a couple and shared a child. It is a significant, and unreasonable, leap to deduce from this that the two were traveling together to the [convenience store] on [a certain date]. The leap is not made any less unreasonable by the fact that the two men accompanying [Hudson's girlfriend] were black, as the investigators knew Hudson to be. Of course, had the officers positively, or at least reasonably, identified Hudson as a passenger before approaching [his girlfriend's] car with their guns drawn—for example, by reference to a photograph of Hudson, or a composite drawing—they would have had reasonable suspicion to seize the car and its occupants. But, lacking reasonable suspicion, the officers elected to seize first and identify second.

*Id.* at 433-34 (footnoted omitted); *see also id.* at 438 ("[T]he facts that Hudson is black and once had a relationship with [the girlfriend] do not provide a particularized basis for suspecting he was in the car.").

The Sixth Circuit was also "mindful that . . . [law enforcement] w[as] not attempting to solve a recently committed crime, or an ongoing one, but rather to arrest a person suspected of having committed a felony over a year earlier." *Id.* at 436-37. The Sixth Circuit observed that "resolution of the question whether reasonable suspicion existed in the first instance must be sensitive to whether the *Terry* stop was made to investigate a crime committed beyond the recent past." *Id.* at 437.

*Hudson* is distinguishable in several respects. First, whereas over a year had passed between the armed robbery and the investigatory stop in *Hudson*, only a few days had passed between the armed robbery in this case and the investigatory stop of Defendant. Second, law enforcement had no reasonable suspicion for stopping the car in

10

*Hudson*. Before stopping the car, they did not confirm that Hudson was in fact one of the passengers; they did not observe any violation of a traffic law; and there was no indication that the car was connected to the crime under investigation. In this case, the car was the connection to the armed robbery. Third, Hudson engaged in no unusual conduct—he was merely a passenger in a vehicle. Here, Defendant walked up to a car that was flanked by police officers, opened the driver's door, and began seating himself in the vehicle. Under the circumstances, Defendant's behavior was highly suspicious. Moreover, there is a question of officer safety in the present case.

Based on the totality of the circumstances, Defendant's conduct provided law enforcement with reasonable suspicion to stop Defendant and investigate his connection to the car.

### B. Statements

"If . . . [law enforcement] officers conduct an illegal search or detention, physical evidence from the search as well as verbal evidence obtained from the detention must be excluded as the 'fruits' of the officers' unlawful action." *United States v. Cotter*, 701 F.3d 544, 547 (8th Cir. 2012) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)); *accord United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002) ("Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search.").

Defendant's only argument for the suppression of his statements is that they were fruits of the illegal investigatory stop. (Def.'s Mem. in Supp. at 10-11.) Because the

Court concludes that the investigatory stop was proper under the Fourth Amendment, there is no basis upon which to suppress the statements.

### III.

Based upon the foregoing Findings and Conclusions, the undersigned Magistrate Judge makes the following:

### RECOMMENDATION

For the reasons set forth herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Statements (ECF No. 20) be **DENIED**.

2. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 25) be **DENIED**.


Date: October  28 , 2014                                    *s/ Tony N. Leung*
                                                            Tony N. Leung
                                                            United States Magistrate Judge
                                                            for the District of Minnesota

                                                            *United States v. Diriye*
                                                            File No. 14-cr-236(1) (JNE/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **November 12, 2014**.